## JANE WEEKS *vs.* OLIVE PATTEN.

One cannot take a beneficial interest under a will, and afterwards set up any right or claim of his own, if otherwise legal and well founded, which shall defeat or prevent the full operation of every part of the will.

Therefore, where one accepts and receives a legacy under a will, wherein a devise of certain real estate in which he has an interest in his own right is made to another, such legatee is barred from afterwards setting up or claiming such real estate.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J. presiding.

The action was assumpsit, to recover for the use and occupation of two sevenths, in common and undivided, of a dwellinghouse, lot, and appurtenances, occupied and improved by the defendant, and situated in *Portland.* The plaintiff proved, that the premises were part of the estate of *Jane Robinson,* deceased ; that *Jane Robinson* was married to *Arthur McLellan,* and had by him seven children, of whom the plaintiff and *Arthur McLellan, Jr.* are two ; that *Arthur McLellan,* the father, continued to improve the premises, by himself or tenants, until his death, in *March,* 1835 ; that the defendant has occupied the same since, and being called upon, on the premises, in behalf of the plaintiff, to pay rent to her,

replied, that she was not then prepared, and that it was not then convenient; and that *Arthur McLellan, Jr.*, after his father's death, conveyed his share in the premises to the plaintiff. It appeared, that the defendant claimed no title to the premises, but, after being called on by the plaintiff for rent, had been forbidden by *Thomas McLellan*, another son of *Arthur McLellan*, to pay the rent to any person but to himself, or his order. *Arthur McLellan, Sen.*, died in *March*, 1835, testate, and his will was duly proved and allowed in the Supreme Court of Probate, in *November*, 1836. A copy of this will was in evidence, and the plaintiff admitted, that she had accepted the provision made for her in the will, and that *Arthur McLellan, Jr.* had done the same.

The first item in the will gives *Thomas McLellan* $15,000, and certain shares in incorporated companies. 3. Gives to the plaintiff $15,000. 6. Devises to his son-in-law, *Henry Illsley*, "in trust for my son, *Arthur McLellan, Jr.*, four hundred dollars, to be applied for said Arthur's benefit, one hundred dollars yearly." 8. Gives vessels and other personal property to *T. McLellan* and *H. Illsley*. 9. Devises to *Thomas McLellan*, his heirs and assigns, the premises in the occupation of the defendant before described, with other real estate. 10 and 12. Devises to the plaintiff certain other real estate. 18. Bequeaths and devises to *Thomas McLellan*, all the residue of the estate of the testator. 19. Appoints *T. McLellan, H. Illsley*, and *B. Potter*, executors.

The Judge directed a nonsuit, and the plaintiff filed exceptions.

*Preble* argued for the plaintiff, but cited no authorities.

*Adams*, for the defendant.

1. No action whatever will lie on account of the real estate in question. The estate was devised to *Thomas McLellan*, and in the same will a large amount of property was given to the plaintiff, and a provision made for *Arthur McLellan*, the younger, and the exceptions state that they have accepted the benefit under the will. They cannot now disturb any of its provisions. *Noyes* v. *Mordaunt*, 2 *Vern.* 581; *Thellusson* v. *Woodford*, 13 *Ves.* 209; *Tibbets* v. *Tibbets*, 19 *Ves.* 656 ; *Brown* v. *Ricketts*, 3 *Johns. Ch. R.* 553 ; *Hamblett* v. *Hamblett*, 6 *N. H. Rep.* 333; *Spofford* v. *Manning*, 6 *Paige*, 383 ; *Allen* v. *Pray*, 3 *Fairf.* 138 ;

*Hyde* v. *Baldwin,* 17 *Pick.* 303 ; *Osgood* v. *Breed,* 12 *Mass. R.* 534 ; 2 *Conn. R.* 196.

2. But if the plaintiff were entitled to recover a share of the estate in the occupation of the defendant, this action could not be maintained. Assumpsit will not lie to settle disputes concerning the title to real estate. *Codman* v. *Jenkins,* 14 *Mass. R.* 93 ; *Allen* v. *Thayer,* 17 *Mass.* R. 299 ; *Wyman* v. *Hook,* 2 *Greenl.* 337 ; *Boston* v. *Binney,* 11 *Pick.* 1 ; *Mayo* v. *Fletcher,* 14 *Pick.* 533 ; 3 *Cowen,* 203 ; *Peake's Ev.* 291 ; 3 *Stark. Ev.* 1514 ; 2 *Com. on Con.* 518 ; *Cowper,* 218 ; *Patch* v. *Loring,* 17 *Pick.* 336 ; *Shumway* v. *Holbrook,* 1 *Pick.* 114 ; *Porter* v. *Hooper,* 2 *Fairf.* 170.

The opinion of the Court was drawn up by

Emery J. — It is contended by the defendant, 1st. That no action can be maintained. 2d. If any action can be sustained, assumpsit cannot. The items of the will on which the defendant relies, are the third, sixth, ninth, tenth, twelfth, eighteenth, and nineteenth. The plaintiff claims the benefit of the first and eighth.

The principle, adopted in Courts of Equity, is, that if a person, being about to dispose of his own property, includes in his disposition, either from mistake or not, property of another, an implication arises, that the benefit under that will shall be taken on the terms of giving effect to the whole disposition.

In this case it is manifest, that, independently of the will, young *Arthur* would have been entitled to one seventh, as heir to his mother ; and as to a portion of that seventh, the plaintiff would have been entitled, as heir to her brother, had he died, had she not have become the grantee of the whole of it by his conveyance. It is clear, that if young *Arthur* had married, and his wife had survived him, she would have been dowable of that seventh. For a woman shall be endowed of a seizin in law ; as where lands or tenements descend to the husband, before entry he hath but a seizin in law, and yet the wife shall be endowed, albeit it be not reduced to an actual possession, for it lieth not in the power of the wife to bring it to an actual seizin, as the husband may do of his wife's land. *Co. Lit.* 31. *a.*

But notwithstanding such might have been the result on such a

state of facts, we have to inquire whether, under the circumstances detailed in the case, signed by the counsel, on which the nonsuit was directed, the plaintiff can sustain her action for the rent of that seventh, and for another seventh in her own right, and yet avail herself of what is given to her by the will of her father.

It is in effect insisted, that acceptance binds and operates forfeiture, without reference to intent. If such is the effect of acceptance, though in ignorance that it was not competent to retain both benefits, but that on taking one, the consequence of law was, she and *Arthur* renounced the other, then, by inadvertence, without choice, an estate might be lost. But in all cases of election, the Court is anxious that a party shall not avail himself or herself of both their claims, and is desirous still to secure to him or her the option of either, not to hold them concluded by equivocal acts, performed, perhaps, in ignorance of the value of the funds or property. The rule of the Court is not forfeiture but election.

And if one is bound to elect, he is entitled, first, to ascertain the value of the funds. 1 *Ves. Jr.* 335, *Wake* v. *Wake*; 2 *Ves. Jr.* 371, *Whistler* v. *Webster*; 3 *P. W.* 126, *Hender* v. *Rose.* And for that purpose may sustain a bill to have all necessary accounts taken. 1 *Ves. Jr.* 171, *Butricke* v. *Broadhurst.* An election under a misconception of the extent of the funds, or claims on that elected, is not conclusive. 12 *Ves.* 136, *Kidney* v. *Coussmaker.* Was the plaintiff acting or acquiescing, cognizant of her rights? Did she intend an election? Can she restore the individual, *Thomas McLellan*, who forbids the defendant to pay rent but to him, the one affected by her claim, to the same situation as if her acts had never been performed, or are these inquiries precluded by the lapse of time? 3 *Brow. P. C.* 167, *Bor* v. *Bor et al.*; 14 *Ves.* 341, *Simpson* v. *Vickers*; 2 *Sch. & Lef.* 268. In equity, the question of election, if doubtful, may be sent to a jury. 13 *Johns.* 54, *Winter* v. *Levensaler*; 1 *Swan.* 360 and *note.*

In *Bor* v. *Bor*, 3 *B. P. C.* 167, it was held, that where a testator, making provision for the different branches of his family, gives a fee simple estate to one, and a settled estate to another, imagining that he had power so to do, a tacit condition is implied to be annexed to the devise of the fee simple estate, that the devisee thereof shall permit the settled estate to go according to the

will; and if in that respect he should disappoint the will, what is devised to him shall go to the person so disappointed. It being presumed, that if the testator had known his defect of power to devise the settled estate, he would, out of the estate in his power, have provided for that branch of his family, who was not entitled to the settled estate; and have declared, that no person should enjoy a legacy or devise, who controverted the power as to any benefit given to another.

However salutary and equitable these rules and decisions may be, in a Court of Equity, where these questions are usually decided, and where the grand inquiry would be,.whether an election induces an absolute forfeiture, or only imposes an obligation to indemnify the claimant, whom it disappoints? Whether a devisee asserting her rights to property of which the will assumes to dispose, must relinquish the whole of the benefits designed for her and her brother, or so much only as is requisite to compensate by an equivalent, the provisions which she attempts to frustrate; for in that Court a compulsory election will be made between inconsistent claims. Yet we apprehend that there is sufficient already before us to warrant the decision of this case at law.

It is said, that *the rule of election is appropriate to every species of instrument,* whether deed or will, *and to be a rule of law as well* as of equity. And the principal reason why courts of equity are more frequently called upon to consider the subject, particularlarly as to wills, than courts of law, is, that at law, in consequence of the forms of proceeding, the party cannot be put to elect. For in order to *enable a court of law to apply the principle, the party must either be deemed concluded, being bound by* the nature of the instrument, *or must have acted upon it,* in such a manner as to *be deemed concluded by what he has done, that is, to have elected.* 2 *Sch. & Lef.* 456, *Birmingham* v. *Kirwan.* This same rule of election applies to every species of right, and even the right of dower is not protected, more than any other. 3 *Leon.* 272; *Cro. Eliz.* 128, *Gosling* v. *Warburton & Crispe,* not overruled. Upon the principle of the doctrine in the leading cases on this subject — 2 *Vern.* 581, *Noyes & ux.* v. *Mordaunt et al*; 13 *Ves. Jr.* 209, *Thelluson* v. *Woodford*; and in 6 *Cruise Tit.* 38, *ch.* 2; and 12 *Pick.* 146, *Reed* v. *Dickerman* — this court has already acted.

The case of *Allen* v. *Pray*, 3 *Fairf.* 138, was for dower. And it was held, that the claim of dower, being inconsistent with the provisions of the will, which, so far as they were for her benefit, she had not waived, she could not maintain her action.

And in *New-Hampshire*, in *Hamblett* v. *Hamblett*, 6 *N. H. Rep.* 333, it was held, that a party, having received a legacy under a a will, shall not be permitted to contest the validity of that will, without repaying the amount of the legacy, or bringing the money into court, in conformity with the rule adopted in the *English* ecclesiastical court. And it was held to apply, even if the party was a minor when the legacy was received. It is true, that this was an appeal from a decree of the Judge of Probate, approving an instrument as the last will of *David Hamblett*, whereupon a trial was had before a jury, who pronounced in favor of the sanity of the testator. And the appellant moved for a new trial. A motion had been before made by the appellee, and was again renewed for a rule on the appellant to bring into court the legacy which she had received under the will, which presented the matter as a preliminary question. The whole case is a very instructive one. " The rule is asserted to be founded in principles of justice, and seems to be sound law. And it is further said, that, in ordinary cases, when a party seeks to repudiate a will as insufficient, he must do so wholly and entirely, by refusing, until it has been established, to receive the benefit of it ; or if any thing has been received, by returning it to the executor, or placing it in the custody of the court, that the executor may have it, in case the judgment should be against the validity of the will."

The case of *Hyde* v. *Baldwin*, 17 *Pick.* 303, cited by the defendant's counsel, was a bill in equity to redeem a mortgage. It was held, that whether the plaintiff's right to redeem had or had not been extinguished by a foreclosure or release in the lifetime of the testator, yet, that the testator intended to remove all doubt, by requiring a release of all claims against his estate, and that the plaintiff's release, in general terms, referring to the will, must be construed to embrace this right to redeem ; and further, that the plaintiff, *by having accepted a beneficial interest under the will*, had barred himself from setting up a claim which would defeat the full operation of the will.

Severe commentaries are often made on the seeming injustice of parents, in their last wills, as to the distribution of *property* among their children. Yet, perhaps, it may with safety be affirmed, that, generally, no person so well understands the real deserts of children respectively, as their parents. The irrepressible strength of paternal affection prompts them to equalize their bounty. But the manner in which that bounty shall be best brought to bear upon the permanent interest of the child, is usually most successfully indicated by the sagacity of the parent in looking profoundly into the character of the child, and providing against contingencies with almost a prophetic perception. True indeed it is, that occurrences, subsequent to the death of the testator, may shew the inefficacy of his best intended safeguards. But acting upon what he knows, and sees, and feels, could he tell all which moves him in his arrangements for the welfare of his family, he might be able to satisfy the most incredulous, of the justice of his designs.

Even if we could reform the will in this case, the grounds upon which we should do so, should we attempt to engage in so unwelcome a service, are not before us. No inventory or the result of settled accounts in the Probate office, is made part of the case. The will we have. In the argument it has been said, by the plaintiff's counsel, that on the face of the will, it bears strong marks of practice on an old broken down man, and that the plaintiff has incomparably short of her distributive share, and *Arthur, Jr.* is to be cut off with four hundred dollars, given in trust to *H. Illsley,* to pay one hundred dollars yearly, from the paternal inheritance, and from that which descended to him from his mother. As the will *is proved,* we must take it *that no practice was improperly exercised on the mind of the testator.* Have we now before us the evidence that *Arthur, Jr.* and the plaintiff, for the purpose of this case, have accepted the provisions for them under the will? It is most distinctly admitted.

There possibly may be some foundation for the remarks of the plaintiff's counsel. Still, we know not what was heretofore bestowed by the testator, if any thing, on the plaintiff or on her husband, or what had before been done for *Arthur,* the son, or what were the reasons upon which the testator ordered the distribution of the estate. He certainly exercised only the freedom, which by

law every other citizen could exercise with regard to the estate with which Providence had blessed him. The mere fact, that there may be some inequality in amount, is very far from impugning the just impartiality or wisdom of the dispositions of the will.

There is no suggestion of fraud or practice to induce the acceptance, by *Arthur* or the plaintiff, of those provisions. Some years have elapsed since that acceptance. We have nothing upon which we can conjecture ignorance of the value of the property by either. And under these circumstances, according to adjudged cases on subjects of this description, we must consider that the *plaintiff has elected to abide by* the provision of the will, that *Arthur* has done the same, and that the plaintiff, coming in under him, must be deemed to have notice of his situation, and is bound by his election. 5 *Ves. Jr.* 445, *Long* v. *Long.* And that they are barred from their claim of the property, against the provisions of the will, which would defeat its full operation.

*Exceptions overruled.*