Allen, J.
 

 The principal contentions made in this action by the defendant in error were that the execution of the indemnity contract was beyond the corporate powers of the defendant corporation, and that the secretary and treasurer was un authorized to make a contract of indemnity on behalf of the defendant corporation. The defendant in error therefore urges, and the lower courts held, that the contract of indemnity which is the basis of the action was invalid.
 

 Consideration of these points requires some review of the admitted facts.
 

 Throughout the course of this opinion the plaintiff in error will be called the plaintiff and the defendant in error the defendant.
 

 The uncontroverted testimony shows that the application for the bonds was made to one C. H. Bancroft, the agent of the indemnity company, authorized to write surety and fidelity bonds for the said company; that this application was made by Charles W. Fairbanks, secretary and treasurer of the Fairbanks Steam Shovel Company, on or about May 16, 1916; that C. H. Bancroft never met T. D. Hunt, the principal upon the bonds, at any time, and that at the time of the application for the bonds Charles W. Fairbanks executed an indemnity agreement, signed, “The Fairbanks Steam Shovel Company, by O. W. Fairbanks, Treasurer,” in which the Fairbanks Steam Shovel Company bound itself to indemnify the surety company
 
 *140
 
 against any and all liability and loss, of whatever nature or kind it might at any time sustain, in consequence of its having given and executed bonds on behalf of T. D. Hunt, the contractor; that 'O. H. Bancroft, on behalf of the indemnity company, did in fact execute two bonds in the respective sums of $10,600 and $23,000 as surety for the faithful performance by Hunt of certain contracts with one McWilliams, a contractor in Arkansas. The record shows that at the time these bonds were issued a contract had been made between the Fairbanks 'Steam Shovel Company and T. D. Hunt for the sale of two dredges, one of which was shipped from Marion, Ohio, to Hunt prior to the execution of the bonds, and one upon May 31, 1916. The record further shows that at the time the said bonds were applied for and issued neither of these two dredges had been paid for.
 

 Defendant claims that C. W. Fairbanks signed the indemnity agreement without any representation of his authority in the matter. It is true that the oral testimony upon this point was conflicting; Bancroft, the agent of the indemnity company, saying that such a representation bad been made by Fairbanks, and Fairbanks denying this statement. However, the execution, of the indemnity agreement by Fairbanks is not controverted, nor is it controverted that this indemnity agreement was signed “The Fairbanks Steam Shovel Company, by C. W. Fairbanks.” When Fairbanks executed his signature in this particular form, he represented himself to be authorized to sign on behalf of the company. The sig
 
 *141
 
 nature constituted a representation to that effect.
 

 The uncontroverted testimony of Bancroft further shows that the bonds would not have been executed by the indemnity company without the execution of the indemnity agreement by the secretary and treasurer, purporting to be on behalf of the Fairbanks Steam Shovel Company.
 

 These facts constitute an inducement and a substantial consideration for the issuing of the bonds. 13 Corpus Juris, 320, note 44, and cases cited. The indemnity company had no acquaintance whatever with Hunt. It appears in the record, and is undisputed, that the indemnity company knew nothing of Hunt’s financial status. The dredges had not been paid for. Hunt had valuable contracts with McWilliams, which, if executed, would give him the funds to carry out his contracts with the Fairbanks Steam Shovel Company.
 

 Fairbanks applied for bonds, to be issued in behalf of Hunt by the indemnity company, and these bonds would not have been issued unless the indemnity agreement had been executed. If the agreement had been properly evidenced by resolution of the directors, authorizing its execution, there would have been no doubt that there was consideration ample to support the indemnity agreement and to justify in that regard a judg ment in favor of the indemnity company.
 

 Defendant claims that in this instance no benefit was received by the corporation. “Benefit” is defined by Bouvier’s Law Dictionary, among other definitions, as being an “advantage.” It was an advantage to the defendant in this case to have the
 
 *142
 
 bonds executed for one of its customers. It was a detriment to tbe bonding company to execute tbe bonds, and it constituted a valuable consideration when the bonding, company assumed tbe liability thereupon. Tbe actual benefit to tbe shovel company may bave been remote. However, tbe fact that tbe bonding company took action which it would not bave taken, bad tbe indemnity agreement not been signed, constituted in tbe legal sense a valuable consideration and benefit.
 

 However, tbe Fairbanks Steam ©hovel Company claims that even if there was. consideration for tbe agreement, or benefit received, tbe contract was
 
 ultra vires,
 
 on tbe ground that the articles of incorporation recite that tbe company “is formed for tbe purpose of conducting a general manufacturing business, embracing the manufacture of steam shovels, dredges, cranes, engines, and excavating machinery, also tbe maintenance of a general machine shop, foundry, traction engine, and supply business.”
 

 It will be noted that this is not tbe case of a contract of suretyship entered into by a public utility. This fact differentiates tbe case from those in which some act of a railway corporation is questioned as being
 
 ultra vires,
 
 as in
 
 Railroad Co.
 
 v.
 
 Hinsdale,
 
 45 Ohio St., 556, 15 N. E., 665, and
 
 Railway Co.
 
 v.
 
 Iron Co.,
 
 46 Ohio St., 44, 18 N. E., 486. As 4 Cook on Corporations (8th Ed.), p. 3529, Section 775, states:
 

 “The power of a railroad corporation * * * [in guaranteeing tbe bonds or dividends of another railroad corporation] is much more restricted than that of a trading or manufacturing corporation, be
 
 *143
 
 cause the former is a
 
 quasi,
 
 public corporation and its powers are strictly construed.”
 

 Moreover, the Fairbanks Steam Shovel Company was not at the period of this transaction forbidden by charter, nor by statute, to enter into such a contract. This fact is of the utmost importance, for it distinguishes this case from certain Ohio decisions inaccurately claimed to require a judgment for the defendant, such as
 
 Straus & Brother
 
 v.
 
 Eagle Ins. Co.,
 
 5 Ohio St., 59,
 
 Kilbreth
 
 v.
 
 Bates,
 
 38 Ohio St., 187, and
 
 Simpson
 
 v.
 
 Building & Savings Association,
 
 38 Ohio St., 349, in which the transaction challenged was prohibited either by charter or by statute.
 

 It is well established that in such cases an estoppel cannot arise against setting up the invalidity of the contract, since “a corporation cannot, by the mere act of individuals, be given a power which the state for general reasons has withheld from it.”
 
 Day
 
 v.
 
 Spiral Springs Buggy Co.,
 
 57 Mich., 146, 151, 23 N. W., 628, 630 (58 Am. Rep., 352); Thompson on Corporations (2d Ed.), Section 1963.
 

 It is true that the Fairbanks Steam Shovel Company was not expressly authorized by its charter, nor by statute, to enter into contracts of surety-ship; but the “implied powers which a corporation has in order to carry into effect those expressly granted and accomplish the purposes of its creation are not limited to such as are indispensable for these purposes, but comprise all that are necessary in the sense of appropriate, convenient, and suitable, including the right of reasonable choice of means to be employed.”
 
 Central Ohio Natural
 
 
 *144
 

 Gas & Fuel Co.
 
 v.
 
 Capital City Dairy Co.,
 
 60 Ohio St., 96, 53 N. E., 711, 64 L. R. A., 395.
 

 Is the contract of indemnity incidental to the furtherance of the legitimate business of the corporation? The contract of indemnity made it possible for one of the customers of the corporation to secure contracts which would enable him .to pay for dredges sold and only partly delivered. The entire transaction of the sale, and the collection of payment for the dredges, in its general scope, was within the corporate purpose, and the indemnity agreement formed a part of that transaction.
 

 The making of the indemnity contract was an appropriate, convenient, and suitable means to the accomplishment of the main purpose of the Fairbanks Steam Shovel Company charter, namely, that of selling dredges and collecting payment therefor, which came entirely within the scope of the articles of incorporation. This power, therefore, was implied from the express powers of the corporation as necessary and proper in the furtherance of its legitimate business.
 

 We think this point is determined in this state by the case' of
 
 Merchants’ Nat. Bk. of Cincinnati
 
 v.
 
 Pomeroy Flour Co.,
 
 41 Ohio St., 552. The first two paragraphs of the syllabus read:
 

 . “In determining whether an act of a trading corporation is
 
 ultra vires,
 
 regard is to be had to its effect and the real object in view.
 

 “Accordingly, although such corporation may not, with its own means, pay or secure a private debt of its president to a third person, yet, where he is its creditor, it m'ay rightly pay or secure such private debt when the real object and effect is
 
 *145
 
 to pay or secure the indebtedness of the company to him in the same amount.”
 

 At page 558 of the opinion the court says:
 

 “Whilst it is true that the incurring of surety-ships is not one of its objects, yet the comprehensive character of its business contemplated the incurring of large obligations, and the employment of the usual facilities and means adopted by business men in like pursuits. And whilst it is also true, as a general proposition, that a corporation has no power to contract a mere suretyship for a third person, unless authorized so to do by its charter, yet in determining whether a given act is tainted with such infirmity, or is otherwise
 
 ultra vires,
 
 regard is to be had to its effect and the real object in view.”-
 

 Authorities of weight upon the same proposition and in favor of the plaintiff in error are as follows:
 
 Timm
 
 v.
 
 Grand Rapids,
 
 160 Mich., 371, 125 N. W., 357, 27 L. R. A., (N. S.), 186;
 
 Thomas, Trustee,
 
 v.
 
 City Nat. Bank of Eastings,
 
 40 Neb., 501, 58 N. W., 943, 24 L. R. A., 263;
 
 Interior Woodwork Co.
 
 v.
 
 Prasser,
 
 108 Wis., 557, 84 N. W., 833.
 

 Moreover, the defendant cannot here raise the question of
 
 ultra vires,
 
 for the contract has been fully performed by the indemnity company. The contract was performed by that company when it executed the bonds. Generally speaking, the rule of
 
 ultra vires
 
 is enforced in its drastic features only where contracts made by private corporations are wholly executory upon both sides. But where the
 
 ultra vires
 
 transaction is executed on one side, a private corporation is estopped from claiming that a transaction was
 
 ultr-a vires
 
 to the extent that
 
 *146
 
 it has been performed by the other party.
 
 Day
 
 v.
 
 Spiral Springs Buggy Co.,
 
 57 Mich., 146, 23 N. W., 628, 58 Am. Rep., 352; 14A Corpus Juris, p. 318.
 

 This rule is based upon the consideration that, as between private corporations, one party cannot receive the benefits which are embraced in total performance of a contract made with it by another party and then set up the invalidity of the transaction as a defense.
 
 Arkansas Valley Town & Land Co.
 
 v.
 
 Lincoln,
 
 56 Kan., 145, 42 P., 706;
 
 Western & Southern Fire Ins. Co.
 
 v.
 
 Murphey,
 
 56 Okl., 702, 158 P., 885;
 
 Manchester & Lawrence Rd.
 
 v.
 
 Concord Ry.,
 
 66 N. H., 100, 20 A., 383, 9 L. R. A., 689, 49 Am. St. Rep., 582;
 
 Kelly
 
 v.
 
 Central Union Fire Ins. Co.,
 
 101 Kan., 91, 165 P., 806, L. R. A., 1918C, 1170;
 
 Eckman
 
 v.
 
 C. B. & Q. Rd.,
 
 169 Ill., 312, 48 N. E., 496, 38 L. R. A., 750.
 

 Defendant claims, however, that even if the contract was not
 
 ultra vires,
 
 its execution by the secretary and treasurer was unauthorized, and hence no binding contract of indemnity was made. The record in fact fails to show any authority given the secretary and treasurer to malee such contract.
 

 Plaintiff urges that even if the contract was unauthorized at the time of its execution by the secretary and treasurer, it was ratified by the corporation. It appears in the record, and is uncontradicted, that in August or September of 1916, the indemnity company, having some fears that the contract as executed by Charles W. Fairbanks, treasurer, would not bind the steam shovel company, sent an agent named 'Simmons, from Columbus, Ohio, to Marion, Ohio, to request the steam
 
 *147
 
 shovel company to ratify the indemnity agreement. Simmons introduced himself as being authorized to represent the indemnity company, presented Charles W. .Fairbanks with a resolution ratifying his signature to the indemnity agreement, and requested its passage by the directors. Fairbanks told Simmons that he would take no action on it now; that he would consult his father. The father of Charles W. Fairbanks, James G. Fairbanks, was at that time, and during all of the period in question, president of the Fairbanks Steam Shovel Company. Fairbanks stated specifically at the trial herein that he conferred with his father concerning the proposed ratification. James G. Fairbanks, the father, testified that no action was taken by him as president in reference to the so-called contract, and that no action was taken by the company with reference to the matter. He stated that he had no knowledge of the indemnity contract until after Simmons came and asked to have the signing of the indemnity agreement by the secretary and treasurer ratified by a resolution passed by the board of directors.
 

 Upon October 13, 1916, some time after the visit of Simmons, a letter was sent to Bancroft at Columbus, which read as follows:
 

 “Dear Sir: Referring to your letter of October 13th, concerning the application on bond from the London & Lancashire Indemnity Company, please be advised that we have decided to allow the application and indemnity agreement to stand as first signed. We are, therefore, returning the papers in this matter. Very truly yours, The
 
 *148
 
 Fairbanks Steam Shovel Co., C. W. Fairbanks, Treasurer.”
 

 With reference to this letter, Charles W. Fairbanks testified that when he said “we” he referred to his father.
 

 It will be observed that this letter does not state that the indemnity agreement is repudiated. It allows the agreement to stand, and merely refuses the passage of the resolution requested.
 

 There is further evidence in the record to the effect that representatives of the indemnity company frequently pressed with Charles W. Fairbanks the question of the liability of the steam shovel company upon this indemnity agreement. Charles W. Fairbanks himself stated repeatedly that he always “evaded the question.”
 

 The loss upon the bond did not occur until 1918, and during the two years from 1916 to 1918 the president of the company, with full knowledge that an application had been made to ratify the signature of Fairbanks, took no action in the matter, but permitted the indemnity company to believe that the steam shovel company was in no way contesting the liability.
 

 We are a,ware that the general rule is that the secretary of a corporation does, not have the powers of a general or managing agent, and we have examined the decisions cited to us which hold that where a contract, ostensibly made by the corporation, is in fact executed by an agent unauthorized to make such contract, the corporation cannot be bound thereby.
 
 Chemical Nat. Bank of N. Y.
 
 v.
 
 Wagner, Assignee,
 
 93 Ky., 525, 20 S. W., 535, 40 Am. St. Rep., 206;
 
 Pelton
 
 v.
 
 Spider Lake
 
 
 *149
 

 Sawmill & Lumber Co.,
 
 132 Wis., 219, 112 N. W., 29, 122 Am. St. Rep., 963.
 

 Moreover, we are aware of the Ohio rule that the business of a private corporation for profit is conducted by the board of directors. Section 8660, General Code;
 
 Wadsworth
 
 v.
 
 Davis, Rec’r,
 
 13 Ohio St., 123;
 
 Bradford Belting Co.
 
 v.
 
 Gibson,
 
 68 Ohio St., 442, 67 N. E., 888. In these decisions, no question of estoppel or retention of benefits by the corporation was involved, and therefore they are not in point upon the facts herein.
 

 We have here, however, a case in which two agents of the corporation, the secretary and treasurer and the president, each had notice that the indemnity company had executed these bonds, and that Charles W. Fairbanks had executed in turn a contract purporting to be signed on behalf of the steam shovel company to indemnify the indemnity company from loss, on the bonds.
 

 Moreover, each one of these officials, under the by-laws of the corporation, was a director of the company. Did this notice constitute notice to the corporation? It is the general rule that knowledge of a single director obtained by him while acting for the corporation will be imputed to the corporation. 2 Thompson on Corporations (2d Ed.), 'Section 1668.
 

 Moreover the president was the business head of the corporation, its chief executive, and as such he was presumed to notify the corporation of any facts which would affect the conduct of its business. It is the general rule that notice to and knowledge of the president is notice to and knowl
 
 *150
 
 edge of the corporation. 2 Thompson on Corporations (2d Ed.), Section 1673:
 

 “As formerly shown, the president of a corporation is frequently invested with all the powers of a general manager of its business, and that he is hence the most appropriate officer to receive any sort of notice with which it is designed to affect a corporation. But, outside of any question of custom or of internal regulation, he is the most, appropriate person to receive such notice, because he is, according to common understanding,' the head of the corporation, having a superintendence over all inferior officers and agents, and notice to the head is necessarily notice to the body. He is its general agent, in a sense, next to the board of directors, sitting as a board, and its most important ministerial functions are generally devolved upon him. No other officer sustains such an important relation to the corporation as he, with the possible exception of the cashier of an incorporated bank. It would seem to follow that a notice communicated to him at the place of business of the corporation, or anywhere else except where he is totally disassociated from his official duties — as, for instance, where he is absent on a journey — would affect the corporation with knowledge of the fact communicated. ’ ’
 

 See
 
 Lea
 
 v.
 
 Iron Belt Mercantile Co.,
 
 147 Ala., 421, 42 So., 415, 8 L. R. A., (N. S.), 279, 119 Am. St. Rep., 93;
 
 Harris
 
 v.
 
 American Bldg. & Loan Ass’n,
 
 122 Ala., 545, 25 So., 200;
 
 Witter
 
 v.
 
 McCarthy Co.,
 
 5 Cal., Unrep., 267, 43 P., 969;
 
 Fresno St. R. Co.
 
 v.
 
 Southern Pac. R. Co.,
 
 135 Cal., 202, 67 P., 773;
 
 Union Gold Min. Co.
 
 v.
 
 Rocky Mountain
 
 
 *151
 

 Nat. Bank,
 
 2 Colo., 248;
 
 Neto York & N. E. R. Co.
 
 v.
 
 New York, N. H. & H. R. Co.,
 
 52 Conn., 274;
 
 Indiana, I. & I. R. Co.
 
 v.
 
 Swannell,
 
 157 Ill., 616, 41 N. E., 989, 30 L. R. A., 290;
 
 Merchants’ Bldg. Imp. Co.
 
 v.
 
 Chicago
 
 Exch.
 
 Bldg. Co.,
 
 210 Ill., 26, 71 N. E., 22, 102 Am. St. Rep., 145;
 
 Reagan
 
 v.
 
 First Nat. Bank,
 
 157 Ind., 623, 61 N. E., 575, 62 N. E., 701;
 
 Smith
 
 v.
 
 Board of Water Com’rs,
 
 38 Conn., 208;
 
 Liebfritz
 
 v.
 
 Dubuque St. Ry. Co.,
 
 48 Iowa, 709;
 
 Connecticut Mut. Life Ins. Co.
 
 v.
 
 Scott,
 
 81 Ky., 540;
 
 Steam Stone Cutter Co.
 
 v.
 
 Myers,
 
 64 Mo. App., 527;
 
 Eggleston
 
 v.
 
 Columbia Tpk. Rd. Co.,
 
 82 N. Y., 278;
 
 Getman
 
 v.
 
 Second Nat. Bank,
 
 23 Hun, (N. Y.), 498;
 
 Conant, Ellis & Co.
 
 v.
 
 Seneca Co. Bank,
 
 1 Ohio St., 298;
 
 Bank of Pittsburgh
 
 v.
 
 Whitehead Co.,
 
 10 Watts (Pa.), 397, 36 Am. Dec., 186;
 
 Union Bank
 
 v.
 
 Wando Mining & Mfg. Co.,
 
 17 S. C., 339;
 
 Porter
 
 v.
 
 Bank of Rutland,
 
 19 Vt., 410;
 
 Walker
 
 v.
 
 Grand Rapids Flouring Mill Co.,
 
 70 Wis., 92, 35 N. W., 332;
 
 New England Car Spring Co.
 
 v.
 
 Union India Rubber Co.,
 
 Fed. Cas, No. 10153, 4 Blatchf., 1.
 

 In this case the notice acquired by the president, that the indemnity company was pressing a demand to have the signature of Charles W. Fairbanks ratified by the corporation, was gained by him in his official capacity while acting on behalf of the corporation, and the corporation is therefore bound by his knowledge.
 

 We cannot agree that these acts amount to a ratification in the strict sense of the word. In this ease the steam shovel company never intentionally assented to the indemnity contract. In other words, it never intended to be bound thereby.
 
 *152
 
 An intention to be bound by the contract originally made without authority is essential to ratification. However, this transaction does bear all of the features of an equitable estoppel. Equitable estoppel is defined as “the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of contract or of remedy. This estoppel arises when one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained. When a party unjustly contrives to put another in a dilemma, and to subject him to necessity and distress, and he acts one way, it' is not for the wrongdoer to insist that he should have acted another way.” 21 Corpus Juris, Section 116, p. 1113.
 

 All of the elements of estoppel by retention of benefits and by acquiescence in the unauthorized act of Charles W. Fairbanks were here present.
 
 *153
 
 The secretary and treasurer of the shovel company, by his representation that he was acting on behalf of the shovel company, induced the indemnity company to act upon that belief, so as to alter its position to its damage. Within a short time the indemnity company asked the shovel company to ratify the act of the secretary and treasurer, and the directors with full notice of this request, notice having been given thereof to the president of the shovel company, failed for two years to dis-affirm the unauthorized act, and thus lulled the indemnity company into a sense of financial security. The shovel company thus has concluded itself from averring against the indemnity company that the indemnity contract was unauthorized.
 

 Since the board of directors had notice of the indemnity contract the shovel company is estopped to deny the validity thereof. As a general rule, if the corporation, through the officer or body having authority to act, acquires or is charged with knowledge of the unauthorized act, the act not being prohibited by charter or by statute, nor contrary to public policy, and does not repudiate it within a reasonable time, but without objection acquiesces therein, it is bound by the unauthorized act. 14A Corpus Juris, 382-384, note 11, and cases cited.
 
 Olcott
 
 v.
 
 Tioga Railroad,
 
 27 N. Y., 546, 84 Am. Dec., 298;
 
 Currie
 
 v.
 
 Bowman,
 
 25 Or., 364, 35 P., 848;
 
 Indianapolis Rolling Mill
 
 v.
 
 St. Louis, etc., Railroad Co.,
 
 120 U. S., 256, 7 S. Ct., 542, 30 L. Ed., 639;
 
 P., C. & St. L. Ry. Co.
 
 v.
 
 Keokuk & Hamilton Bridge Co.,
 
 131 U. S., 371, 9 S. Ct., 770, 33 L. Ed., 157.
 

 This rule particularly applies where the cor
 
 *154
 
 poration receives and retains the benefits of the unauthorized act.
 

 These holdings are sometimes put upon the ground that ratification of the unauthorized act is presumed from failure to disaffirm. This is simply another way of saying that the authority of the act cannot be challenged because of the injustice which would arise if the strict letter of the law as to the necessity for authority of the act were followed. As stated in the case of
 
 Rolling Mill
 
 v.
 
 St. Louis, Fort Scott & Wichita Rd. Co.,
 
 120 U. S., 256, at page 259, 7 S. Ct., 542, 544 ( 30 L. Ed., 639):
 

 “The rule of law upon the subject of the disaffirmance or ratification of the acts of an agent required that if they had the right to disaffirm it they should do it promptly, and, if after a reasonable time they did not so disaffirm it, a ratification would be presumed. In regard to this it appears that the board, when notified of what had been done by their agents, did not disaffirm their action at that time, but that the act or resolution of disaffirmance was passed about two years after notice of the transaction, and that if the suit brought in this case can be considered as an act of disaffirmance, it came too late, as it'was commenced some six months after they had knowledge of the release.”
 

 “When the president of a corporation executes, in its behalf, and within the scope of its charter, a contract which requires the concurrence of the board 'of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified his
 
 *155
 
 act.
 
 Indianapolis Rolling Mill
 
 v.
 
 St. Louis, etc., Railroad,
 
 120 U. S., 256. And. when a contract is made by any agent of a corporation in its behalf, and for a purpose authorized by its. charter, and the corporation receives the benefit of the contract, without objection, it may be presumed to have authorized or ratified the contract of its agent.
 
 Bank of Columbia
 
 v.
 
 Patterson,
 
 7 Crunch, 299;
 
 Bank of United States
 
 v.
 
 Dandridge,
 
 12 Wheat., 64;
 
 Zabriskie
 
 v.
 
 Cleveland, etc., Railroad,
 
 23 How., 381;
 
 Gold Mining Co.
 
 v.
 
 National Bank,
 
 96 U. S., 640;
 
 Pneumatic Gas Co.
 
 v.
 
 Berry,
 
 113 U. S., 322, 327. This doctrine was clearly and strongly stated by Mr. Justice Story, delivering the judgment of this court, in each of the first two of the oases just cited.”
 
 P., C. & St. L. Ry. Co.
 
 v.
 
 Keokuk & Hamilton Bridge Co.,
 
 131 U. S., 371, 381.
 

 A case somewhat similar to the one at bar is
 
 Creditors’ Claim & Adjustment Co.
 
 v.
 
 Northwest Loan & Trust Co.,
 
 81 Wash., 247, 142 P., 670, L. R. A., 1917A, 737, Ann. Cas., 1916D, 551. In this case the bank had guaranteed by telegram the payment of a customer’s account to a manufacturing company. Later the manufacturing company sent a letter expressing doubt as t® the binding force of the guaranty and requested confirmation of a telegram sent by the bank, in which the bank had stated that it guaranteed the account. The bank wrote that its telegraphic guaranties were accepted by other banks and that “the telegram in question is a guaranty in fact.” The contract of guaranty was neither authorized nor prohibited by the statute. The court held that the bank had lulled the plaintiff in error into a sense of financial security upon which it relied to its injury, and
 
 *156
 
 that the bank therefore was estopped to set np the claim of
 
 ultra vires.
 

 In this case by the evasion of the question of liability upon the indemnity contract, by not repudiating the indemnity contract for two years after notice thereof, the defendant lulled the plaintiff into a sense of financial security upon which it relied to its injury.
 

 It is true that in the case of
 
 Pelton
 
 v.
 
 Spider Lake Sawmill & Lumber Co., supra,
 
 we have a decision which is superficially contra to this holding. In that case it was held that a treasurer of a corporation, who did not have special authority to indorse notes in the corporation’s name, was without authority to do so, although a vice president of the corporation might have known and assented to the act. In the
 
 Pelton case,
 
 however, at page 227 (112 N. W., 32) of the opinion, the point is emphasized that the corporation received no benefit whatever from the notes indorsed in its name, and this fact completely differentiates it from the ease at bar.
 

 In the instant case the corporation received the benefits of the unauthorized act. Hunt, who could not otherwise have secured a contract, secured a surety upon bonds upon which the indemnity company was compelled to pay a liability. By the execution of these bonds the Fairbanks Steam Shovel Company was made more secure in the collection of its claim from Hunt. It cannot secure and retain that benefit, and for two years after notice thereof, during which the question is constantly pressed, fail to repudiate its liability under the indemnity agreement, even though that agree
 
 *157
 
 ment was executed by an officer not authorized to bind the corporation by such an agreement, and then set up, as a valid defense, that the contract of indemnity was unauthorized.
 

 Defendant argues that, as in this case the liability of the bonding company as surety was fixed from the date of the bonds, the rule, which under such circumstances places upon a party the duty to disaffirm a claimed obligation or later be bound thereby, cannot apply. It claims that that rule applies only to situations in which the party claiming the right to recover has changed its position or permitted such a change to occur during the other party’s silence. We have little sympathy with this contention from the ethical standpoint. The argument amounts to this: I put the plaintiff into a situation from which he could not extricate himself. It was therefore useless for me to dis-affirm the contract.
 

 Also, while the bonding company was bound by its execution of the bonds from the date of the execution, it is true that, if the steam shovel company had disaffirmed the obligation two years before the loss ‘occurred, as it had opportunity to do, the bonding company might have taken, some action to prevent the loss.
 

 For the above reasons, the judgment will be reversed.
 

 Judgment reversed, and judgment for plaintiff in error.
 

 Marshall, C. J., Jones, Matthias, Day, Kinkade and Robinson, JJ., concur.