ELISHA A. PACKER & another *vs.* HINCKLEY LOCOMOTIVE WORKS.

Suffolk. Mar. 12, 13. — May 4, 1877. ENDICOTT & SOULE, JJ., absent.

If in an action for goods sold and delivered the defence is payment to an agent, the fact that the principal has previously revoked the authority of the agent is not conclusive of plaintiff's right to recover, if the revocation of authority has not been communicated to the defendant, and there is other evidence in the case from which the jury would be authorized in finding that the defendant had reason to suppose that the authority of the agent to receive payment continued.

If a fact is to be found by a jury, the existence of which is to be determined by a variety of circumstances, a request that one of these circumstances, taken separately and not in connection with the other circumstances, is of itself insufficient to warrant the finding of the main fact, may be rightly refused.

CONTRACT for a balance due on an account annexed for cerain cargoes of coal.

At the trial in the Superior Court, before *Pitman*, J., it appeared that the plaintiffs were shippers of coal in New York city; that Wm. Wallace & Co., in Boston, during 1872, 1873, and as late as August, 1874, by permission of the plaintiffs, solicited and communicated to them many orders for cargoes of coal from consumers and dealers in and about Boston. The defendant's evidence tended to show that the plaintiffs solicited Wallace & Co. to obtain orders for them as late as January, 1875. The plaintiffs' evidence tended to show that these orders were filled by the plaintiffs, if they were satisfactory to them, by shipping the coal to the buyers, and were rejected if unsatisfactory to them. It appeared that on each ton so sold the plaintiffs paid Wallace & Co. a commission for their services in the transaction. The plaintiffs' evidence tended to

show that Wallace & Co. had transactions during the same time, of the same kind, both with other shippers of coal who had, and others who had not, previously given them permission to solicit orders, and, upon every shipment, received from the shipper a bill and bill of lading of the coal from the shipper to the buyer, and, retaining the bill, substituted a bill of their own, which they presented with the bill of lading to the buyer and thereupon received payment for the cargo, receipting for it on the bill with their firm's signature. The defendant introduced the evidence hereinafter recited to show that on two occasions the plaintiffs sent bills and bills of lading direct to such buyers for cargoes of coal, for which settlements were made with Wallace & Co. by note or check, payable to the order of Wallace & Co., without objection made by the plaintiffs.

For the cargoes shipped by the plaintiffs up to August, 1874, it appeared that Wallace & Co. had procured and received payment as aforesaid, sometimes in notes payable to the plaintiffs' order, which they sent to the plaintiffs, sometimes in notes to their own order, which they indorsed and sent to the plaintiffs, and sometimes got discounted, sending the proceeds to the plaintiffs, the plaintiffs knowing in some cases that the sums so received were proceeds of notes taken to the order of Wallace & Co. It further appeared that when Wallace & Co. indorsed notes to the plaintiffs, the plaintiffs sometimes returned them to Wallace & Co. to be discounted at Boston banks; also that the plaintiffs sent them at times notes received by the plaintiffs directly from third parties to be discounted by Wallace & Co. at Boston banks, which Wallace & Co. were unable to accomplish. The plaintiff David Packer testified that Wallace & Co. did not so take notes to their own order or discount them or collect cash by any prearrangement with the plaintiffs, and that the plaintiffs had objected to their doing so. The defendant introduced two letters, in one of which the plaintiffs requested Wallace & Co. to discount notes for them, and in the other acknowledged the discounting of notes by Wallace & Co., drawn o the order of that firm, and thanked them for the same. It appeared that the plaintiffs accepted the notes and cash so obtained, and continued to send to Wallace & Co. bills and bills of lading of the coal shipped by the plaintiffs on orders trans-

mitted by them until August, 1874, and in one instance as late as August 24, 1874.

The plaintiffs' evidence tended to show that they did not, and the defendant's evidence tended to show that the plaintiffs did, know of the habit of Wallace & Co. of substituting for the plaintiffs' bills their own bills, and presenting them to the buyers of the cargoes shipped by the plaintiffs.

In 1872 Wallace & Co. offered to sell to the defendant corporation (the name of which was at that time the Hinckley & Williams Works) some coal, and received from it an order. Thereupon Wallace & Co. requested the plaintiffs to ship the coal mentioned in the order, and the plaintiffs shipped several cargoes upon bills of lading, in which they were named as consignors, part running to Hinckley & Williams, as consignees, and part running to " H. & W., care E. Prentice & Son," as consignees, and the plaintiffs' evidence tended to show that the plaintiffs sent these bills of lading with bills of the coal to Wallace & Co., who also sent to the Hinckley & Williams Works, in filling this order, a cargo which had been shipped to Wallace & Co. on their own account. One of the defendant's officers testified that it was his impression that the defendant received bills direct from the plaintiffs for one or more of these cargoes, but that he had no distinct recollection, and was not positive as to the fact. Another witness testified that he bought the plaintiffs' coal from Wallace & Co., and paid them for it on bills of their own.

Wallace & Co. presented to the Hinckley & Williams Works a bill of lading and a bill for each cargo, in some of which the word " Agents " was wanting, and in some it was stricken out. The Hinckley & Williams Works paid Wallace & Co. for these cargoes in checks to their own order, and took receipts for payment on said bills over the signature of " Wm. Wallace & Co." It did not appear that the defendant had any other dealings with Wallace & Co. or the plaintiffs, down to August 10, 1874, and it did not appear that it knew of any of the facts above related, except those of the transaction between it and Wallace & Co., down to September 11, 1874, when it paid Wallace & Co. for the last cargo in question.

In the first week in August, 1874, the plaintiffs suspected that Wallace & Co. had fraudulently converted to their own use money which they had collected from buyers, other than the defendant, for coal shipped to the buyers by the plaintiffs, and David Packer, one of the plaintiffs, testified that Wallace & Co. had then so converted such money, and that he then forbade them to collect any more cash and take any more notes except to the plaintiffs' order for coal shipped by the plaintiffs. The defendant was ignorant of these facts at the time of the following transactions with Wallace & Co.

On August 10, 1874, the defendant received from Wallace & Co. a letter offering to sell it coal, and thereupon gave them an order for one thousand tons of coal at $7.33 per ton, delivered at the defendant's wharf in Boston, with freight and all charges paid. Wallace & Co. then in a letter to the plaintiffs, on August 17, 1874, wrote, " Ship the Hinckley Locomotive Works 1,000 tons Lehigh broken 5.80 to Boston, privilege of bridges, 10½ to 11 feet (not over) water." Upon receipt of this letter the plaintiffs informed Wallace & Co., by letter of August 18, 1874, that they had entered the order at 5.80, " free on board," that is, the consignee to pay freight, adding, " why not consign vessels direct to them at Boston," and shipped on August 19, 1874, to the defendant, one cargo of coal by the schooner Revenue, and sent by mail to the defendant a letter inclosing a bill of lading of the cargo, in which the plaintiffs were named as the shippers, and the defendant as consignee, " he paying freight," and a bill of the cargo, in the form " Hinckley Locomotive Works, bought of E. A. Packer & Co.," and which named the price of the coal at $5.80 per ton. On September 2, 1874, the plaintiffs sent to the defendant another cargo of coal by the schooner Fitzpatrick, and sent by mail to the defendant a similar bill of lading of the cargo, inclosed with a letter and bill of the cargo. The plaintiffs did not send any bill of the coal to Wallace & Co., but wrote, notifying them that they had sent the bills and bills of lading to the defendant, and added, " The writer has no time to make duplicate invoices." One of the firm of Wallace & Co. called upon the defendant and requested leave to take the bills, sent to the defendant by the plaintiffs, saying he wished to adjust the

commissions due from the plaintiffs to his firm. The defendant thereupon gave up these bills to him and did not receive them back, but instead were presented by Wallace & Co. with bills of their own, the words " for E. A. Packer & Co. " being written under the words " Wm. Wallace & Co., agents, dealers, and shippers of coal " in one of the bills; the bills stated the price at $7.33 per ton. The defendant gave its note, dated September 2, 1874, payable to the order of Wallace & Co., to them on that date, for the cargo of the Revenue at $7.33 per ton, and $86.82 interest, amounting to $2388.44, at six months, in settlement for that cargo, receiving a receipt on the bill presented by Wallace & Co. This note was discounted by Wallace & Co. at a bank, and it was paid there by the defendant, but the plaintiffs never received the proceeds, and they had no notice of this payment to Wallace & Co.

The plaintiffs' evidence tended to show that on September 11, 1874, Wm. P. Wallace, of Wallace & Co., represented to David Packer, then in Boston, that the cargo of the Revenue had not been paid for; that Packer then requested Wallace to go to the defendant and obtain settlement for it, and Wm. P. Wallace then obtained of the defendant two notes in settlement for the cargo of the Fitzpatrick, at $7.33 per ton, the bill, as rendered by him, amounting to $2671.96; that the treasurer of the defendant, at the request of Wm. P. Wallace, gave this sum in its two promissory notes, one for $1947 and the other for $724.96, dated September 11, 1874, and payable to the order of Wallace & Co., and the bill for the cargo was receipted by Wm. P. Wallace, " for E. A. Packer & Co.; " that Wm. P. Wallace brought one note to David Packer, and represented that it was given in payment for the cargo of the Revenue, and made nc mention of the other note of the same date, and that David Packer, believing his said representations, though he remonstrated with Wm. P. Wallace for taking the note to the order of Wallace & Co., accepted it.

No notice as to mode of payment (other than may be held to be contained in the act of sending the bills and bills of lading direct to the defendant) was ever given by the plaintiffs to the defendant until September 23, 1874, nor was any objection made to it as to the payments made by it to Wallace & Co. until that date.

The defendant contended that the payments to Wallace & Co. for the cargoes of the Revenue and the Fitzpatrick were payments to the plaintiffs' authorized agents, and discharged the defendant's debt for those cargoes.

Upon these facts the plaintiffs requested the judge to rule as follows: " 1. As a matter of law, if the plaintiffs in fact, before shipping to the defendant in 1874, forbade Wallace & Co. to collect cash or notes to the order of Wallace & Co. for coal sold by the plaintiffs, then there was no authority in Wallace & Co. to receive payment for the cargoes of the Revenue and Fitzpatrick.    2. That the consent of the plaintiffs to collections by Wallace & Co., when the plaintiffs sent them the bill and bill of lading, and Wallace & Co. rendered their bills to the buyers, gave no implied authority to Wallace & Co. to receive payment for cargoes of the Revenue and the Fitzpatrick, sent to the defendant, for which the plaintiffs sent bills and bills of lading to the defendant."    The plaintiffs also requested the judge to direct a verdict for plaintiffs for the amount of the cargo of the Fitzpatrick.

The judge refused the requests, and ruled that whether the previous conduct of the plaintiffs with Wallace & Co. created an implied agency in Wallace & Co. to receive notes to their own order for the cargoes of the Revenue and Fitzpatrick, was for the jury to determine.    The jury returned a verdict for the defendant; and the plaintiffs alleged exceptions.

*T. L. Livermore*, for the plaintiffs.

*H. W. Paine & W. W. Vaughan*, for the defendant.

LORD, J.    The first ruling asked for was rightly refused.    The question to be determined by the jury was not whether, as matter of right, as between the plaintiffs and Wallace & Co., they had authority to receive payment of the cargoes of coal, but whether, as between the plaintiffs and the defendant, there had been such transactions as to warrant the defendant honestly to believe that Wallace & Co. were authorized to receive the payment in behalf of the plaintiffs, and whether in fact the defendant had in good faith, under such belief, paid the same.    The abstract right, as between the plaintiffs and Wallace & Co., was therefore not in question, and the presiding judge was not bound, as a matter of law, to instruct the jury that this fact had

a decisive bearing upon the question at issue.   The fact, as a fact, that there was no authority on the part of Wallace & Co. to receive the payment, was only one of the facts proper to be considered by the jury in determining the main question, whether the conduct of the plaintiffs had been such as to warrant the defendant in believing that the authority to receive the payment existed in Wallace & Co., and we are to presume that, in the instructions given, the jury were required to give to that fact its proper significance.

The second request was also, we think, properly refused. · When a fact is to be determined by a jury, the existence of which is to be proved by a variety of facts and circumstances, it is not the right of a party to require of the presiding judge to rule that one or more of these facts and circumstances, taken separately and not in connection with the other facts and circumstances, is of itself insufficient to authorize the finding of the main fact.   But the judge may properly state to the jury the exact fact or state of facts necessary to be proved in order to establish the claim or defence, and leave the jury to determine, upon all the competent evidence in the case, whether the fact to be established is proved, either by direct evidence of the fact, or by reasonable and proper inference from the facts proved.

The third request, that the presiding judge should direct a verdict for the plaintiffs, was, of course, properly refused if there was evidence which should have been submitted to the jury. There is no doubt that there was evidence to be submitted to the jury, unless the two facts, stated in the first and second prayers for instructions, were such as in law precluded the defence set up by the defendant.   We cannot assume those to be the only facts in the case, for the bill of exceptions finds, not only that there were many other facts in the case, which were admitted, but several upon which the evidence was conflicting The question was therefore properly submitted to the jury, under appropriate instructions, while the specific prayers were not such as the presiding judge was bound in law to grant.

*Exceptions overruled.*