# CASES

## ARGUED AND DETERMINED

### IN THE

# United States Circuit and District Courts.

---

## THE WAYNESVILLE NAT. BANK *v.* IRONS.

### *(Circuit Court, S. D. Ohio.   June, 1881.)*

1. NEGOTIABLE PAPER—PRIMA FACIE EVIDENCE.

    In actions upon negotiable paper, the production of it by the plaintiff, with proof of the genuineness of the signatures and of the indorsements, entitles the plaintiff, without any additional evidence, to recover the full amount thereof, with interest, unless the defendants make out some satisfactory defence.

2. SAME—WANT OF AUTHORITY TO NEGOTIATE—RATIFICATION—CORPORATION—SECRETARY—TREASURER—ESTOPPEL—ACCOMMODATION MAKERS.

    Action upon negotiable paper, made by I. and others for the accommodation of, and payable to, the M. V. Ry. Co., and indorsed in blank by the railway company.   Defence: that it was negotiated without the authority or consent of the railway company.   *Held*, (1) if the note, having previously been indorsed in blank by the railway company, was delivered to the plaintiff by W., assuming to represent the railway company in the transaction, and in consideration thereof the plaintiff paid to W. the amount thereof, less the discount, or, at W.'s request, paid an equivalent amount of the railway company's obligations, so that the railway company in fact received the value thereof, and the transaction was reported by W. to the secretary of the company, and by him to its treasurer, and the company has continued ever since to enjoy the benefit of the proceeds of said discount, without any offer to return the consideration, then the railway company is not entitled to set up the defence upon which it relies; (2) if the title of the plaintiff, in this respect, is sufficient as against the railway company, it is equally valid as against the accommodation makers.

3. NOTES MADE IN PURSUANCE OF RESOLUTION—RECITALS OF PREAMBLE DO NOT CONSTITUTE PART OF AGREEMENT.

The note in suit was made for the accommodation of the M. V. Ry. Co., in pursuance of a resolution of the board of directors of the company, in the preamble of which it was recited that, "Whereas, in the judgment of the board of directors, the interests of the M. V. Ry. Co. demand that certain rights of way should be speedily procured, and that the work of construction should be speedily prosecuted, these two objects requiring much more money than is at present under the control of the company," etc.; but neither in the resolution nor the agreement, which it provided should be delivered to the note-makers by the company, was there any mention of the purposes for which said notes were to be used. *Held,* that these papers do not constitute any pledge or agreement on the part of the railway company to use these notes for the purposes specified in the preamble, and for no other purposes.

4. PROVINCE OF JURY—AGREEMENT, AS DISTINGUISHED FROM MERE STATEMENTS AS TO PURPOSES, HOPES, ETC.

There also being oral testimony tending to prove the existence of an agreement to use said notes for the purposes specified in the foregoing preamble, *held,* that that testimony, in connection with the preamble and resolution, is for the consideration of the jury; but in determining whether there was such an agreement, the jury should discriminate so as to be satisfied clearly of the existence of a definite agreement to that effect, as distinguished from mere declarations and statements on the part of the officers of the railway company as to the purposes, hopes, and expectations that they entertained concerning the matter.

5. NEGOTIABLE PAPER—NOTICE OF EQUITIES—PRESIDENT OF BOTH CORPORATIONS—WHEN PURCHASER RESPONSIBLE FOR MISAPPLICATION OF PROCEEDS.

The note in suit (accommodation note of I. and others to the M. V. Ry. Co., above described) was, before it became due, negotiated to the W. bank, through its cashier. It was claimed that this was done in violation of the agreement upon which the note was given. H. was at that time president of both the railway company and the bank, was member of the executive committee of the railway company and of the discount committee of the bank, and was claimed to have had knowledge of such agreement. *Held,* (1) that if H. had actual knowledge of the facts alleged by the makers of the note, and he was aware of and acted in the negotiation on the part of the bank for its discount, while such negotiation was in progress, the bank is chargeable with notice of these facts; (2) but if H., on being inquired of by the cashier in respect to the propriety of discounting the note, had replied to him, "These names are undoubtedly good for $10,000, but my relation to the two companies is such that I decline any part in the decision of the question of discount of the note," and thereupon withdrew and took no further part in it,—the mere answering of that question is not such a participation in the transaction as to charge the bank with notice of facts of which H. had knowledge. *Held, further,* as to the violation of the alleged agreement, that the misapplication of the proceeds of the note, made by the officers of the railway company without the knowledge and participation of the bank, would not defeat a recovery by the bank on the note.

6. NOTICE—CORPORATIONS—PRESIDENT, DIRECTORS, AND OTHER OFFICERS.

Discussion of the subject and full citation of authorities in note.

*Bateman & Harper,* for plaintiff.

*Geo. R. Sage, A. G. McBurney,* and *Thos. F. Thompson,* for defendants.

MATTHEWS, Justice, (*charging jury.*) This action is brought by the Waynesville National Bank, as the owner and holder of a promissory note which reads as follows:

"$10,000. LEBANON, OHIO, April 15, 1878.

"One year after date, we, or either of us, promise to pay to the order of the treasurer of the Miami Valley Railway Company ten thousand dollars, for value received."

It is signed by Samuel Irons, William F. Dill, Daniel Perrine, F. Hutchinson, William Morlatt, and William V. Bone. On the back of it is the following indorsement: "Demand and notice of protest waived. W. B. SELLERS, Treas. M. V. Ry. Co."

The note is what is known as negotiable paper, and the production of it by the plaintiff, with proof or admission of the genuineness of the signatures and of the indorsement, without any additional evidence, entitles it to recover from the parties the full amount thereof, with interest, unless the defendants make out some satisfactory defence. The railroad company is sued together with the makers, and they defend separately. The answer of the railroad company sets up that the note was not indorsed or delivered by the treasurer to the bank, neither for a valuable consideration nor otherwise; denies that there is anything due thereon, and denies that the plaintiff is the legal or equitable owner of it, and alleges that the plaintiff came into possession of it wrongfully and illegally, and without authority from, or consent of, the defendant. It sets up the circumstances in detail of the original negotiation of the note, as collateral security, by Mr. Irons and the treasurer of the company, at the Lebanon National Bank, to secure a demand note of the company for $3,000, and that it was obtained from the possession of that bank, and discounted by the plaintiff, without any authority.

The relation that the railway company occupies to the paper is different from that occupied by the other defendants, and it is proper to dispose of the questions arising on the defences of the railway company independently, in the first instance, and with a view to that I give you this charge: If the jury are satisfied from the testimony that the note in suit, having previously been indorsed in blank by the treasurer of the railway company, was delivered to the plaintiff by Israel Wright, assuming to represent the railway company in the transaction, and in consideration thereof the plaintiff paid to Israel Wright the amount thereof, less the discount, or paid, at Wright's request, an equivalent amount in obligations of the railway company,

so that the railway company in fact received the value thereof, and the transaction was reported by Wright to the secretary of the company, and by him to its treasurer, and the company has continued ever since to enjoy the benefit of the proceeds of said discount without any offer to return the consideration, then the railway company is not entitled to set up the defence upon which it relies.*

The answer of Mr. Irons is filed separately. He denies that the plaintiff is the owner or holder of the note. It avers that the note was made by the defendant herein and his co-defendants, except the railway company, jointly and severally, and all as principals, for the accommodation of said railway company, and loaned to it upon the agreement and understanding that said company should, upon the maturity of said note, pay the same, and that the proceeds of said note, should be applied exclusively by said company to the purchase of right of way for said company's road, and the further construction and completion of the same; of all which the plaintiff had due notice before said note came into plaintiff's possession. He alleges that the note came into the possession of the plaintiff without the knowledge or consent of himself or of any of his co-defendants, and with notice that the proceeds would be applied to the payment of debts of said company incurred prior to the making of said note, and to purposes other than those aforesaid for which said note was made. He further alleges that no part of said proceeds was applied by said plaintiff to the purposes aforesaid for which said note was made, nor by any other person to whom they may have paid the same. The third defence alleges the insolvency of the railway company prior to the time when the note came into the possession of the plaintiff, and its final and complete suspension of work upon its road, and all attempts to complete the same, whereby, and in consequence of other facts in the prior defence which I have just read, of which it is alleged the plaintiff also had notice, it is claimed that the negotiation of the note was illegal. The fourth defence alleges the circumstances in reference to the original deposit of the note with the Lebanon National Bank, and claims that possession of the note was obtained from the Lebanon National Bank without the authority, knowledge, or consent of the defendants. The fifth defence denies that Sellers, as treasurer, assigned or transferred the note to the plaintiff, or that the railway company authorized him to do so. Then comes the

*Similar case: *New Hope, etc., Bridge Co.* v. *Phœnix Bank*, 3 Comst. (N. Y.) 156.—[REP.

sixth defence, in reference to which a ruling has already been made excluding testimony offered in its support, and which is not, therefore, open to any further consideration.

The answers of the other defendants, except in one particular, in respect to which it is not necessary to refer you, contain substantially, if not literally, the same defences which I have just enumerated as contained in Mr. Irons answer. And without referring to them by number, inasmuch as the same defences seem to be reiterated several times in different forms, I will state in the first place that the defence of these gentlemen rests upon a denial of the title of the plaintiff to this note, based upon the want of authority alleged to exist on the part of Mr. Sellers to make the transfer, and of Mr. Wright to make the negotiation, and a denial of the fact that the company, through any of its officers, assented to the arrangement whereby the plaintiff became the owner of the note. In respect to that I give you this charge: That if the title of the plaintiff, so far as it depends upon the question of indorsement and delivery, and the authority of Wright to bind the railway company in its negotiations, is sufficient as against the railway company, it is equally valid as against the other defendants.

And the further question is whether the legal title to the note, which was in the railway company, passed by the acts done in its name to the plaintiff. The note having been indorsed in blank by the treasurer of the railway company, the title would thereafter pass by mere delivery, and would be sufficient in the hands of a *bona fide* holder, for value paid, receiving the same before due in the ordinary course of business, without any notice of want of authority or other defect of title in the party transferring its possession. In other words, if this note, being indorsed in blank by the treasurer, was found in the possession of Israel Wright on a certain day before its maturity, and was by him presented for discount to the bank, and the bank discounted it and paid to him the proceeds of it, without any notice that Wright had no authority, and without notice that the railway company was not assenting to the transaction, and without notice of any other facts which would constitute a defect in the authority of either the treasurer or the agent representing himself to be such, then the plaintiff is what in law is termed a *bona fide* holder, for value, prior to maturity, without notice of defect. And it would make no difference whether Wright had found the paper somewhere or had stolen it, or had possession of it in any other way; his delivery of it under these circumstances would have vested the plaintiff

with the complete legal title as against the railway company and as against the other parties. I speak of the legal title. I am not now considering the defences resting on other grounds; they depend on other circumstances, to which I will now advert. I am simply calling your attention to the questions raised by these parts of the answer which assert that the plaintiff has no right to sue because it is not the holder and owner of the paper, or because it has not the title to it.

Then we come to the other defences made on the part of the defendants, other than the railway company, and which constitute the equities claimed on their part. It is claimed, to state it shortly, that the other defendants signed the note as an accommodation to the railway company, upon the faith of an understanding between them and the railway company as to the appropriation of its proceeds; that this understanding was violated by the transaction in this case by which the bank became the holder of the note in suit; and that this was done, so far as the bank is concerned, with full notice on its part of the rights of the defendants. The first question under this head, therefore, is this: Was there such an understanding; if so, what were its terms? It is claimed, in the first instance, that that understanding exists by force of the resolutions of the board of directors of the railway company, of April 15, 1878, and of the obligation of the company, given to a trustee in trust for the makers of these notes, in pursuance of this preamble and resolution. I will read them:

"WHEREAS, in the judgment of this board of directors the interests of the Miami Valley Railway Company demand that certain rights of way should be speedily procured, and that the work of construction should be vigorously prosecuted, these two objects requiring much more money than is at present under the control of the company, and it having been suggested the most feasible mode of raising said money would be by certain of the directors and others executing their notes in sums not exceeding ten thousand dollars, ($10,000,) each due in one year, and loaning same to the company, said Miami Valley Railway Company to provide for the payment of said notes at their maturity, and also to indemnify the makers of said notes against loss by reason thereof, by depositing with a trustee the first mortgage bonds of the company, in the ratio of three dollars in bonds to one dollar of liability created by said notes; therefore,

"Resolved, that the treasurer of the Miami Valley Railway Company be, and he is hereby, authorized and instructed to execute, in the name and on behalf of the company, instruments of writing, in substance as follows, namely:

"Whereas, —— have executed their joint notes to the order of the treassurer of the Miami Valley Railway Company, dated April 15, 1878, and due

in one year, for the sum of ———— thousand dollars; now, this instrument of writing is to show that said notes are made for the accommodation of the Miami Valley Railway Company, and said company hereby agrees and binds itself to pay same at maturity, and said company has placed in the hands of ————, as trustee, first-mortgage bonds of the company, in the ratio of three to one of the liability incurred, to indemnify said parties against any loss by reason of making said note; and in the event of the Miami Valley Railway Company failing to pay said notes at maturity, or within ten days (10) thereafter, then the said trustee is hereby authorized to realize the money upon said bonds at such rate as he shall deem proper, and apply the proceeds thereof to the payment of note: *provided, however,* sale of bonds shall not be made until authorized by a majority of the makers of said note, and when said note shall have been paid by the Miami Valley Railway Company, the aforesaid bonds shall be returned to said company, and the treasurer of the company be also authorized and instructed to deliver aforesaid bonds to said trustee in order to consummate the transaction."

I charge you that these papers do not constitute any pledge or agreement on the part of the railway company to use these notes for the purposes specified in the preamble, and for no other purposes. Those purposes are referred to in the preamble by way of recital as indicating the grounds and reasons for the necessity which, in the opinion of the board of directors, existed for raising more funds than they then had in their control. But I am unable to perceive in it any pledge or agreement to use the notes in any other way than might at the time seem best to the board of directors for the general purpose of carrying on the interests in which they were engaged. I think, therefore, so far as any such agreement is deduced from this paper, that such claim is unfounded. I mean to be understood that the use of the note in maintaining the credit of the company, by the payment of any of its debts, is not a breach of the faith upon which the note was given.

Now, then, going beyond that paper, there is still a question of fact outside of it, or possibly the testimony taken in connection with it, from which it is possible to claim the existence of such an understanding, which cannot be deduced from the paper itself. That is for your consideration. You are to examine the oral testimony in addition to this and in connection with it, and to find what the facts are in regard to the claim,—whether there was any understanding and agreement outside of the paper, between the makers of these notes and the railway company, by which it was understood and agreed, as the condition on which these gentlemen signed these notes, that they were to be signed only and merely for the purpose of procuring rights of way and in payment of liabilities for construction thereafter to be incurred.

In exercising your discretion and judgment in the examination of the evidence on that point, I deem it necessary only to say that you are to discriminate as reasonable, sensible, business men, so as to be satisfied clearly of the existence of a definite agreement and understanding to that effect, as distinguished from mere declarations and statements, on the part of the officers of the company, as to the purposes and expectations that they entertained and indulged the hope of realizing by the use of this additional fund. A mere statement that they believed that such and such an object would be accomplished, that they hoped the final and complete construction of the road would be secured, and they intended so to apply the money as to realize that purpose, does not, in my opinion, amount to proof sufficient to satisfy the law of the definite understanding which is claimed in this case to exist. But if you find that the communications between the parties went beyond that, and that there was a definite understanding that the proceeds of these notes should be applied only to a specific purpose, then the defence based on that ground will have been established to that extent—as to the existence of an agreement. In order, however, to make that defence available in this case, as against this plaintiff, you must go another step and ascertain whether or not, at the time when the discount was in fact made by the plaintiff, the plaintiff had what is considered in law to be notice of the existence of such an understanding and agreement; and it becomes, therefore, important to understand what constitutes such notice.

It is claimed by the defendants that the bank is chargeable with knowledge of all the facts of the transaction between the original makers of the note and the railway company; that they were in fact known to Mr. S. S. Haines, he at that time being president of both corporations, a member of the executive committee of the railway company, and a member of the committee of the bank having charge of the business of its discounts.

The rule which should govern you on this point is this: If you find that Mr. Haines had actual knowledge of the facts, as alleged by the defendants, the makers of the note, that the proceeds should be applied only to particular purposes, or that it was to be discounted only under specified circumstances, and that he was aware of, and acted in, the negotiation on the part of the bank for its discount, while such negotiation was in progress, then the bank is chargeable with notice of these facts, otherwise it is not. And in order that I may not be liable to any misapprehension on a point that may turn

out to be very important in your consideration of the case, I wish to add that it was quite competent and proper for Mr. Haines, occupying those relations to both parties to the transaction, to say, when it was proposed to have the note discounted by the bank, "My position in reference to both the bank and the railway company is such that I do not think it would be proper for me to take any part in the transaction on either side;" and that, if he did so, any knowledge of any facts which he might have had at that time would not affect the rights of the bank. To charge the bank with responsibility and liability on account of any knowledge of Mr. Haines, he must, in my opinion, be acting at the time in the name and on behalf of the bank, as its agent and representive. If he was not, but if the negotiation was in fact conducted by the cashier, and Mr. Haines declined to take any part in it, and refused to be considered as acting for either party, then the question will be, not what Mr. Haines knew, but what the bank may have known by reason of any knowledge on the part of the cashier, and is not chargeable with the knowledge of Mr. Haines.

I am asked to add to the charge, in reference to the relation between Mr. Haines and the bank, and the effect of any knowledge on his part, this charge:

"If you find that Mr. Haines declined to participate in the negotiations for the discount of the note, but, notwithstanding that, he did in fact participate in any part of these negotiations, the bank is chargeable with notice of any facts in the knowledge of Haines constituting a defence to the makers of the note, as already stated in the general charge."

I am unwilling to give that charge in these terms, because it is possible there is ambiguity in them. But I will add to my charge this: In order to prevent the bank from being liable for Mr. Haines' knowledge, his declining to participate in the negotiations must be real, and not merely formal; it must not have been a mere pretence; it must not have been merely in words, but in fact. What I mean to say is, not that he said so and so, but that he did not in fact participate in the negotiations on behalf of the bank. At the same time if you find this to be the fact: that Mr. Haines, on being inquired of by the cashier in respect of the propriety of discounting the note, had replied to him, "These names are undoubtedly good for $10,000, but my relation to the two companies is such that I decline any part in the decision of the question of the discount of the note," and thereupon withdrew and took no further part in it, I don't consider the mere answering of that question a participation in the transaction

in such a manner as to warrant fixing any responsibility upon the bank for any knowledge of Mr. Haines.

There is one other matter that is essential to the maintenance of this defence—*First*, the agreement between the makers and the railway company upon which it is based; *second*, the knowledge of that on the part of the bank, (of both of which I have heretofore spoken;) and, *third*, a violation of that agreement in the actual appropriation of the note at the time of the discount or subsequently. In respect to that my charge to you is that the misapplication of the proceeds of the note, made by the officers of the railway company without the knowledge and without the participation of the bank, would not invalidate the right of the bank to recover on the note. It is only a knowledge of the purpose of the officers of the railway company to make the misapplication, and their joining in effecting that purpose, by giving them the amount of the discount of the note with that intention, that makes them responsible for the breach of faith towards the makers of the note. For instance, in respect to the $3,000 and the interest on it, part of the consideration of this note consisted of the payment of that amount of indebtedness from the railway company to the Lebanon National Bank, incurred by an original transaction with it; if you find that that was a legitimate transaction, and that the proceeds of that much of the note were applied in fact according to the intention of the makers of the note, then the Waynesville National Bank, in respect to that part of the consideration, stands exacty in the shoes of the Lebanon National Bank, and would be entitled to recover for that part of the consideration. So with regard to the additional amount of $1,500, applied in another similar way; and so with regard to all of them. These notes were obligations of the railway company, and in order to complete the defence of the makers of the note, as against the bank, on this ground, it must be shown that the appropriation of the proceeds, in which the bank participated with knowledge, was contrary to that agreement; that is, that the debts, the payment of which was provided for by the appropriation, were not embraced within the terms of the agreement according to which the note was originally given.

Verdict for plaintiff for $11,183.34.

Motion for new trial made; heard, overruled, and judgment for plaintiff for amount of verdict.

NOTE. In view of the number and magnitude of corporations in this country at the present time, and their constant growth, the question of notice

involved in the foregoing case is exceedingly important. It is a matter of common business experience that the same person is frequently a director and prominent executive officer in several corporations at the same time. W. is president of the A. and B. Cos. As president of the former, or as a member of a firm, or individually, he becomes informed of certain facts; he never communicates them to the officers of the B. Co., and takes no part in a transaction between the two corporations, or between the B. Co. and the firm of which he is a member; or, in such transactions, or in one between himself and the B. Co., acts adversely to the B. Co. In any of these cases, is the B. Co. to be charged with constructive notice of the facts known to W.? To hold the corporation charged with notice, under such circumstances, would unsettle and endanger every business transaction between corporations and persons so situated.

It is submitted that the learned judge, in the foregoing opinion, has stated the true rule governing the question of notice in such cases. In order to charge the corporation with notice of facts of which a director or other officer had knowledge, *he must have acted in the transaction on behalf of the corporation.*

A couple of leading cases will well illustrate the rule. In *First Nat. Bank of Hightstown* v. *Christopher*, 40 N. J. L. 435, decided by the supreme court of New Jersey in 1878, the facts were as follows: P. was a member of the firm of M. & J. S. P., and also a director of the bank of H. He obtained at the bank the discount of a note belonging to the firm, which had been got of the maker by fraud. He had notice as a member of the firm of the fraud before the note was offered for discount, but did not communicate his knowledge to any of the officers of the bank. The court held that the knowledge of P. was not constructively notice to the bank. The syllabus is: "A bank discounting a note before its maturity is not chargeable with the knowledge of illegality or want of consideration acquired by one of its directors in other than his official capacity, such director not having acted with the board in making the discount. A director offering a note, of which he is owner, to the bank of which he is a director, for discount, is regarded in the transaction as a stranger, and the bank is not chargeable with the knowledge of such director of an infirmity or defect in the consideration of the note." The court discusses and negatives the idea that the corporation can be charged in all cases when it is the director's duty to communicate his knowledge to the corporation; and considers in that connection the case of *Fulton Bank* v. *N. Y. & Sharon Canal Co.* 4 Paige, 127.

In the case of the *Bank of U. S.* v. *Davis*, 2 Hill, (N. Y.) 451, a bill of exchange was sent to one of the directors of the bank to be discounted for the benefit of the drawer, but the former, who was a member of the board which ordered the discount to be made, and *who took part in its decision thereon,* presented it for discount for his own benefit, and received the avails; and the court held that the bank was chargeable with knowledge of the fraud, and could not recover upon the bill. *Nelson*, C. J.: "I agree that notice to a director, or knowledge derived by him, while not engaged officially in the business of the bank, cannot and should not operate to the prejudice of the latter. * * * But in this case, as has already been observed, Williams

(the director) was a member of the board, *participating at the time in discounting of bills and notes as one of the directors of the bank.*" Page 463. The decision in *Myers* v. *Ross,* 3 Head, (Tenn.) 59, proceeded on that ground. See page 62. In Alabama the courts have not been willing to go as far, and in a case similar to *Bank of U. S.* v. *Davis, supra,—Terrill* v. *Branch Bank at Mobile,* 12 Ala. (N. S.) 502,—held that the bank was entitled to recover. But it seems that the corporation has generally been held chargeable with notice when a director, who had knowledge of defects, *acted for the corporation in the transaction;* in each case though, where the corporation has been held responsible for the knowledge of the director, this element has been present. *National Security Bank* v. *Cushman,* 122 Mass. 490; *Bank of New Milford* v. *Town of New Milford,* 36 Conn. 93; 1 Hall, (N. Y.) 480; *Clerks' Savings Bank* v. *Thomas,* 2 Mo. App. 367; *Smith* v. *South Royalton Bank,* 32 Vt. 341.

The mere fact that one who has knowledge of certain facts is a director of the corporation, if he does not communicate it to the board of directors or other proper officers, or does not act in the transaction, will not charge the corporation with notice of such facts. *Farrell Foundry Co.* v. *Dart,* 26 Conn. 376; *General Ins. Co.* v. *U. S. Ins. Co.* 10 Md. 517; *U. S. Ins. Co.* v. *Shriver,* 3 Md. Ch. Dec. 381; *Fulton Bank* v. *N. Y. & Sharon Canal Co.* 4 Paige, Ch. 127; *Powles* v. *Page,* 3 C. B. 16, 10 Jur. 526; *Farmers', etc., Bank* v. *Payne,* 25 Conn. 444; *National Bank* v. *Norton,* 1 Hill, 572; 2 Hill, 451; Wade on Notice, § 683.

And if the director or other officer of the corporation did not act for it in the transaction, but was an adversary to it, and especially if perpetrating a fraud upon it, the corporation will not be bound by knowledge which he possessed. *Commercial Bank* v. *Cunningham,* 24 Pick. (Mass.) 270; *Washington Bank* v. *Lewis,* 22 Pick. (Mass.) 24; *City Bank of N. Y.* v. *Barnard,* 1 Hall, (N. Y.) 70; *Stratton* v. *Allen,* 1 C. E. Green, (N. J. Eq.) 229; *Stevenson* v. *Bay City,* 26 Mich. 44; *Thompson* v. *Cartwright,* 33 Beavan, 189.

Thus, where the president or other officer of the corporation sold real estate to it, any knowledge of equities or defects which he may have had, unless he communicated such knowledge to the corporation, will not bind it. *Winchester* v. *Baltimore, etc., R. Co.* 4 Md. 231; *Wickersham* v. *Chicago Zinc Co.* 18 Kan. 481; *Barnes* v. *Trenton Gas-Light Co.* 27 N. J. Eq. 33; *La Farge, etc., Ins. Co.* v. *Bell,* 22 Barb. 54. In *Hoffman, etc., Co.* v. *Cumberland, etc., Co.* 16 Md. 456, the corporation was held affected with notice, but its formation, acquiring of title, and the circumstances impairing its title, all arose out of one entire plan.

A distinction has been attempted to be made between a mere director and "*the president, cashier, or other executive officer*" of the corporation. It is submitted that when the information comes to a director or other officer otherwise than as an officer of the company, (*i. e.,* casually or by reason of his connection with other matters,) the question of the liability of the corporation therefor is to be determined by the same rules, whether the person be merely a director or whether he be an *executive* officer. If Mr. Wade, in his work on Notice, (§ 675,) intends to maintain (as it seems he does) that there is a difference, his citations do not sustain the proposition. In the case of *Bank of New Milford* v. *Town of New Milford,* 36 Conn. 93, the officer not only

possessed the information, but acted on behalf of the corporation to be charged. The same may be said of *Fulton Bank* v. *Benedict*, 1 Hall, (N. Y.) 480, cited in section 676. The decision in the principal case is opposed to such a distinction, as are also the cases of *Barnes* v. *Trenton Gas-Light Co.* 27 N. J. Eq. (12 C. E. Green) 33; and *Winchester* v. *Ballimore, etc., R. Co.* 4 Md. 231, in which the presidents sold real property to their respective corporations, and it was held that the corporations were not chargeable with notice of defects or equities of which the presidents had knowledge. See, also, *Miller* v. *Ill. Cent. R. Co.* 24 Barb. (N. Y.) 312; *Porter* v. *Bank of Rutland*, 19 Vt. 410.

The language of Chancellor Walworth, in *Fulton Bank* v. *N. Y. & Sharon Canal Co.* 4 Paige, Ch. 127, goes to the extent that when an executive officer, not acting adversely to his corporation, is informed that it contemplates action which, if it were notified of the facts of which he is acquainted, would make it liable, that it becomes his duty to communicate his knowledge to it, and if he does not the corporation is chargeable. In that case Cheeseborough was president of the bank, and a director and member of the finance committee of the canal company; Brown was president and also a member of the finance committee of the canal company, and a director of the bank. At a meeting of the finance committee, at which Cheeseborough and Brown were present, it was ordered that the funds of the canal company be deposited in the bank to its account, under the control of its finance committee; which was done. Brown, as president of the canal company, left his signature at the bank as the person upon whose check the money was to be drawn, and afterwards drew the money and appropriated it to his own use. Chancellor Walworth held the mere knowledge of Cheeseborough of the purpose for which the money was deposited was not notice to the bank, but that he must also have known that Brown intended to commit the fraud upon the canal company; that the knowledge of such purpose on Brown's part would have made it Cheeseborough's duty to inform the disbursing officers of the bank, and a failure to have done so would have made the bank liable. But see this case commented on in *First Nat. Bank* v. *Christopher*, 40 N. J. L. 435, 438–9.

The writer believes that there is a difference between a director and an executive officer when notice is given to an officer *to be communicated to the corporation;* as, for instance, the service of summons, giving notice of protest, proofs of loss, etc. In all such cases the question is, not whether he has communicated such notice to the corporation, but whether he was the officer designated by law, or by the corporation, to receive such notice. Having been designated to receive such notice, and it having been given to him *as notice to the company, he has thereby acted in the transaction on behalf of the corporation.* The authority and duty of a director and of an executive officer, in reference to such matters, is very different. As to whether notice to a mere director, when it is given for the purpose of being communicated to the corporation, is notice to it, see *National Bank* v. *Norton*, 1 Hill, 572.

The principal case is important on the point as to *what constitutes a participation in the transaction* on the part of the director or other officer. It is believed that in all the decided cases, where the corporation has been held responsible for the knowledge of a director, he has taken part in *determining*

the question on behalf of the corporation. See *Bank of U. S.* v. *Davis,* 2 Hill, (N. Y.) 451; *National Security Bank* v. *Cushman,* 122 Mass. 490; *Bank of New Milford* v. *Town of New Milford,* 36 Conn. 93.

As a matter of *presumption,* the knowledge of a director or other officer may be of much importance. Thus, where the cashier of a bank, with knowledge that a stockholder had pledged his stock to secure a debt, was *ex officio* a member of the discount committee, and a note of the same stockholder was discounted by the bank, it was held that the cashier was presumed, in the absence of evidence to the contrary, to have been present when the note was discounted, and his knowledge that the stock had been pledged was a sufficient notice to the bank. *Bank of N. Am.* v. *McNeil,* 10 Bush, (Ky.) 54; and see *National Security Bank* v. *Cushman,* 122 Mass. 490; *Commercial Bank* v. *Wood,* 7 Watts & S. 89.

Notice to the *board of directors* of a corporation is notice to the corporation. *Mechanics' Bank of Alexandria* v. *Seton,* 1 Pet. (U. S.) 299; *Bank of Pittsburgh* v. *Whitehead,* 10 Watts, 397; *Olcott* v. *Tioga R. Co.* 27 N. Y. 546; *Toll Bridge Co.* v. *Betsworth,* 30 Conn. 380. And no subsequent change in the persons composing the board will prevent the corporation from being affected by such notice. *Mechanics' Bank of Alexandria* v. *Seton, supra; Fulton Bank* v. *N. Y. & Sharon Canal Co.* 4 Paige, Ch. 127. And if a body, consisting of several persons,—as a board of directors,—is engaged in the transaction of the business of the corporation, notice to any member of such body, while engaged in said business, is notice to the corporation. *Bank of U. S.* v. *Davis,* 2 Hill, (N. Y.) 451; Wade, Notice, § 682. Notice to the *cashier,* in matters relating to the ordinary business of the institution, is notice to the bank. *New Hope, etc., Bridge Co.* v. *Phenix Bank,* 3 Comst. (N. Y.) 156; *Trenton Banking Co.* v. *Woodruff,* 1 Green, Ch. 117; and see *Branch Bank, etc.,* v. *Steele,* 10 Ala. (N. S.) 915. The *treasurer* is the proper officer to whom, when payment is made, notice of the purpose to which it is to be applied should be given. *New England, etc., Co.* v. *Union, etc., Co.* 4 Blatchf. 1. And, generally, notice to the officer in charge or having control of a department or branch of the business, concerning matters pertaining to such department or branch, is sufficient. *Quincy Coal Co.* v. *Hood,* 77 Ill. 68; *New England, etc., Co.* v. *Union, etc., Co.* 4 Blatchf. 1; *Smith* v. *Water Com'rs,* 38 Conn. 208; *Mechanics' Bank* v. *Schaumburg,* 38 Mo. 228; *Danville Bridge Co.* v. *Pomroy,* 15 Pa. St. 151. See *Black* v. *Camden, etc., R. Co.* 45 Barb. 40; *Nashville, etc., R. Co.* v. *Elliott,* 1 Coldw. 611. Knowledge of facts by, or notice to, a mere *stockholder* is not notice to the corporation of the existence of those facts. *Housatonic Bank* v. *Martin,* 1 Metc. (Mass.) 294; *Bank of Pittsburgh* v. *Whitehead,* 10 Watts, 397; *Union Can. Co.* v. *Loyd,* 4 Watts & S. 393; *The Admiral,* 8 Law Rep. (N. S.) 91. Nor to a corporator, unless he is constituted an organ of communication by charter or by-laws. *Custer* v. *Thompkins Co. Bank,* 9 Pa. St. 27.

*Cincinnati. July,* 1881.                                   J. C. HARPER.