### NIBLACK v. COSLER.

(Circuit Court, S. D. Ohio, W. D.    June 1, 1896.)

No. 4,658.

1. BANKS AND BANKING—SPECIAL DEPOSIT—NEGLIGENT ALTERATION OF CERTIFICATE.

A bank, on receiving certain notes as a special deposit, issued a certificate for the amount of the notes, made out a printed form, from which the words "in current funds" were erased, and the words "in certain notes" substituted. The certificate was marked "Special Deposit." Having been transferred, this certificate was sent by the holder to the bank for payment. The notes had not then been collected, and the cashier was directed to return the certificate; but, as the signature was torn, he was instructed to prepare and transmit a duplicate. In doing so he carelessly omitted to change the printed form by erasing "in current funds" and substituting "in certain notes." *Held*, that there was no ground for a claim that the second certificate was given in payment of the first, that it was only a substitute for it, and that the receiver of the bank was only required to surrender to the holder the notes constituting the special deposit, for which the original was issued.

2. SAME—KNOWLEDGE OF CASHIER IMPUTABLE TO BANK.

Knowledge by a member of a firm of the true consideration of a certificate of deposit, which the firm discounted with a bank, and which had been negligently altered in making out a duplicate, *held* to be the knowledge of the bank, where such member was also its cashier, and, as such, acted as the sole representative of the bank, in discounting the certificate.

This was a suit in equity by William C. Niblack, receiver of the Columbia National Bank of Chicago, against S. S. Cosler, assignee

of Dwiggins, Starbuck & Co., a partnership doing business under the firm name of the Valley Bank, to compel the allowance of a certain claim.

Duncan & Gilbert, Scribner & Hurd, and H. A. Fulton, for complainant.

Harmon, Colston, Goldsmith & Hoadley and Charles Darlington, for respondent.

SAGE, District Judge. This suit is to compel the allowance of a claim against the Valley Bank, founded upon two certificates of deposit which the defendant has rejected. The material facts, as they appear in the record, are as follows:

Dwiggins, Starbuck & Co. owned a half interest in the Valley Bank, a private banking institution located at Yellow Springs, Ohio; and S. S. Pucket and his brother owned the other half. James M. Starbuck of Dwiggins, Starbuck & Co., was president, W. H. Starbuck, vice president, S. S. Pucket, cashier, and S. S. Cosler, teller.

On the 17th of November, 1892, the Valley Bank issued to Dwiggins, Starbuck & Co. a certificate of deposit for $4,175, payable "in certain notes," which words were substituted for the words "in current funds," erased from the printed form. The only consideration for this certificate was the deposit in the bank of the notes referred to, the same being equal in amount to the amount of the certificate, which was issued as evidence of the deposit. The certificate was marked "Special Deposit," and the notes referred to were sealed up and kept by the Valley Bank as a special deposit. Prior to April 19, 1893, this certificate had been negotiated and transferred to the Columbia Bank of Chicago, of which Zimri Dwiggins of the firm of Dwiggins, Starbuck & Co., was the president.

In April, 1893, this certificate was sent to the Valley Bank for payment. The notes had not been collected, and the cashier of the Valley Bank was directed to return it. The signature to the certificate having been torn, the cashier was instructed to write a duplicate for it, and return it to the Columbia National Bank. He prepared and mailed the duplicate, but by carelessness or inadvertence omitted to erase from the printed form the words "in current funds" and substitute the words "in current notes." He also omitted to write across the face of the certificate "Special Deposit." The notes referred to were the remaining assets of a prior banking concern in which Dwiggins, Starbuck & Co. owned one-half and the Puckets one-half. The certificate to Dwiggins, Starbuck & Co. represented their half interest, and a like certificate to Pucket and brother represented their interest.

The second certificate, for $5,150, in favor of the United States Loan & Trust Company, negotiable and payable in current funds, is dated February 1, 1893. The history of the transaction leading up to the issuance of this certificate, as disclosed by the record, is that on February 2, 1893, Dwiggins, Starbuck & Co. deposited certain bonds in the Valley Bank, and received therefor a certificate of deposit, in preparing which a printed form was used. The words

"payable in current funds" were erased, and the words "payable in certain bonds" substituted, the amount named in the certificate being the exact amount of the bonds specified, with interest. Across the face of this certificate, which was mailed to Dwiggins, Starbuck & Co., Chicago, was written "Special Deposit."

On the 4th of February, 1893, Dwiggins, Starbuck & Co. returned it, stating that the United States Loan & Trust Company was the real depositor of said bonds, and requesting that a certificate in favor of that company be substituted for the one returned, and that it be dated February 1st, instead of February 2d. The request was granted, but the teller of the bank, in issuing the new certificate, was guilty of the same carelessness and neglect as in the case of the first certificate; that is to say, he failed to erase from the printed form the words "in current funds," and to substitute therefor the words "in certain bonds." He also failed to mark the certificate "Special Deposit."

There was no new or other consideration whatever for the issuing of the new certificate. As to the first certificate, the evidence established that it was merely mailed to the Valley Bank for payment. There is no equity in the claim made upon the new certificate. It stands upon the same footing as the original certificate from which the name had been torn, and that certificate showed that it was payable only in the notes referred to. The defendant pleads that he holds these notes, and is ready to surrender them to the complainant, which is all that the complainant has a right to ask. The claim that this certificate was issued in payment of the original is completely negatived by the facts. It was intended to be substituted for the original, which was not then payable, because the notes for which it had been issued had not been collected.

As to the second certificate, the facts were known to Dwiggins. He was the party who caused it to be issued in its original form. Two days before the purchase of it by the Columbia Bank, S. S. Pucket, wishing to know more about the transaction on which it was founded, went to Chicago, as he testifies, and consulted Dwiggins in regard to it. Dwiggins said to him that the bonds were sent to the Valley Bank for deposit, and for sale if any one should want them. This was at the desk of the latter in the Columbia Bank. Dwiggins was then cashier of that bank, and conducted the transaction on its behalf. Upon these facts, was the Columbia National Bank a bona fide purchaser? It is claimed for the defendant that notice to Dwiggins of the true consideration for which the certificate was issued was notice to the Columbia Bank. It is admitted for the plaintiff that, if Dwiggins had no personal interest in the certificate, notice to him would be notice to the bank. Relying upon the fact that the firm of Dwiggins, Starbuck & Co., of which he was a member, received the proceeds paid by the Columbia National Bank for this certificate, plaintiff claims that Dwiggins could not act for himself and for the bank at the same time, and that when he undertook to do so in a matter in which he was personally interested he ceased to be the agent of the bank.

In support of this contention Innerarity v. Bank, 139 Mass. 332, 1

N. E. 282, is cited. There A. shipped a cargo of sugar to B., who gave him authority to sell the same. The bill of lading recited that the shipment was by order of B., and that the sugar was deliverable to his order. It made no mention of any agency. B. indorsed the bill of lading, and delivered it to a bank of which he was a director, and pledged the cargo to the bank as security for a loan by the bank to him. This loan was approved by the board of directors at a meeting at which B. was present. It was held that B.'s knowledge of the fraud was not imputable to the bank, and that an action by A. against the bank for the conversion of the sugar could not be maintained. In that case it appeared that the transaction was approved by the board of directors at a meeting at which B. was present, and it did not appear what part, if any, he took thereat. The court called attention to the fact that in the transaction B. was acting avowedly, not for the corporation, but for himself, and necessarily acting adversely to its interests. The court said that to apply the doctrine of imputed knowledge to the bank in such a case would be, in effect, to hold that there could be no transaction between a bank and one of its directors in which, as far as the transfer of property was concerned, the bank could be protected, and that the bank could never discount paper of which one of its directors was a party, and retain the possession of an innocent indorsee for value under the law merchant.

The court further said that, whether B. acted or not at the meeting of the directors, he could not lawfully have done so as the representative of the bank, and that a director offering a note of which he was owner for discount, or proposing for a loan of money on collateral security alleged to be his own property, stood as a stranger to the bank. That case differs from the case at bar in that here the transaction on behalf of the bank was conducted exclusively by Dwiggins. The rule that the principal cannot take the benefit of the transaction conducted by its agent ostensibly on its behalf without assuming full responsibility not only for his acts, but for his knowledge, applies.

Other cases cited in complainant's brief are to the same effect as the case in 139 Mass. 332, 1 N. E. 282, but they are not in conflict with the rule above stated, for in each one of them the director was conducting the business on his own behalf, while it was conducted on behalf of the bank by his fellow directors or by the bank's officers.

The rule applicable to the case at bar is stated in Bank v. Irons, 8 Fed. 1. There it was claimed by the defendants that the bank was chargeable with notice of all the facts of the transaction between the original makers of the note in suit and the Miami Valley Railway Company, by whose directors the note was signed, and by whose treasurer it was indorsed. This claim was founded upon the proposition that those facts were known to S. S. Haines, he at that time being president of both corporations, a member of the executive committee of the railway company, and a member of the committee of the bank having charge of the business of its discount. Mr. Justice Matthews, who presided at the trial, held that, if Mr. Haines had actual knowledge of the facts that the proceeds

of the note sued upon should be applied only to particular purposes, or that it was to be discounted only under specific circumstances as alleged by the defendants, and if he was aware of, and acted in, the negotiations on the part of the bank for its discount while such negotiations were in progress, then the bank was chargeable with notice of those facts; otherwise not. He said that it was quite competent and proper for Mr. Haines, occupying these relations to both parties to the transaction, to decline to take any part on either side, for the reason that it would be improper for him to do so on account of his position in reference to both the bank and the railway company; and that, if he had done so, no knowledge of any facts which he might have had at that time would affect the rights of the bank; that to charge the bank with responsibility and liability on account of his knowledge he must have been acting at the time in the name and on behalf of the bank as its agent and representative. This rule is cited with approval at section 540c, 1 Mor. Corp., and in Mechem, Ag. p. 560, § 730, where the cases are cited. In a note to Bank v. Irons will be found a collection of cases in support of the rule as stated. Judgment will be for the defendant.